## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| FACET TECHNOLOGY CORP.,<br><br>      Plaintiff,<br><br>      v.<br><br>TOMTOM INTERNATIONAL B.V.,<br>TOMTOM, INC., AND TOMTOM NORTH<br>AMERICA, INC.,<br><br>      Defendants | Civil Action No. 1:24-cv-00111-PB-TSM |

## <u>MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS UNDER FRCP 12(b)(6)</u>

Defendants TomTom International, B.V. ("TT Int'l"), TomTom, Inc. ("TTI")[1], and

TomTom North America, Inc. ("TTNA") (collectively, "Defendants") move to dismiss Plaintiff

Facet Technology Corp,'s ("Facet" or "Plaintiff") Amended Complaint for Patent Infringement

("Amended Complaint") for failure to state a claim upon which relief can be granted under Fed.

R. Civ. P. 12(b)(6).

---

[1] TTI was merged into TTNA on December 31, 2022, as recorded by the Massachusetts Secretary of the Commonwealth.  TTI no longer exists. By operation of law, all of TTI's obligations have been assumed by TTNA. Mass. Gen. Laws. C. 156B § 80(1); *see also Hoy v. Nat'l Sch. Bus Servs., Inc.*, No. 04-2238-G (Mass. Super. Ct. June 22, 2005) (under Massachusetts law, "the corporation that emerges from a merger assumes … all liabilities and obligations of the subsumed organization."). Facet was so advised by counsel for Defendants but has refused to remove TTI as a party, so Defendants include them as movants.

Facet brings this action for alleged infringement of U.S. Pat. Nos. 9,335,255 ("the '255 patent") and 9,671,328 ("the '328 patent") (collectively, "patents-in-suit"), both of which expired on August 10, 2021. Facet, which appears to be solely-owned by James E. Retterath (inventor of the patents-in-suit), was previously dissolved on March 13, 2018 before being reinstated April 1, 2021 and 28 days later receiving a license to the patents-in-suit, apparently for the sole purpose of suing Defendants. The patents-in-suit are owned by Mandli Communications, Inc. ("Mandli") which appears to maintain an undisclosed financial interest in the outcome of this case[2], despite not being named as a plaintiff.[3]

In its now Amended Complaint, Facet still has not stated a claim on which relief can be granted. For the reasons set forth below, the Amended Complaint should be dismissed in its entirety with prejudice.

---

[2] "The Parties shall each receive a portion of the Net Recovery that is obtained from any entity that is granted any license, rights, covenant not to sue or settlement for the Facet Patent Family." (Dkt. 22-2 at 5.)
[3] This is not a motion to add Mandli Communications as a necessary plaintiff, but if this case persists then Defendants expect to file such a motion.

## **TABLE OF CONTENTS**

I.    LEGAL STANDARDS ........................................................................................ 4

II.   ARGUMENT .................................................................................................... 5

A. Facet did Not Mark its Patented Technology or Provide Notice of Direct Infringement to any Defendant ........................................................................................................ 6

*Facet's Complaint Cannot Serve as Notice* ..................................................... 6

*Facet did Not Allege that it Notified any Defendant of Infringement* ................... 7

*Facet did Not Allege that it Marked any Product with the Patents-in-Suit* ............ 8

*Because Facet Cannot Recover Damages on Any Direct Infringement Theory, the Amended Complaint Should Be Dismissed with Prejudice* .................................. 8

B. Whether or Not Facet Provided Sufficient Notice of Direct Infringement, the Seven Year Delay Between Such Notice and the Complaint Should Estop All Counts .............................. 9

C. Facet Does Not Allege and Has Not Provided Notice to any Defendant What Activities Constitute Induced Infringement ................................................................................ 11

*Facet did Not Allege the Prerequisite Direct Infringement for a Claim of Induced Infringement* ................................................................................................. 12

*Facet did Not Adequately Allege Notice of the Patents-in-Suit* ........................... 12

*Facet did Not Adequately Allege Notice of Infringement by Third-Parties* ........... 13

*Because Facet Cannot Recover Damages on Any Induced Infringement Theory, the Amended Complaint Should Be Dismissed with Prejudice* .................................. 14

D. The Claims as Granted in the Patents-in-Suit are not Supported by the Written Description as Filed ........................................................................................................................ 15

*'255 Patent Claim 12 Lacks a Written Description* ........................................... 16

*'328 Patent Claim 9 Lacks a Written Description* ............................................. 16

E. Facet Lacks Standing to Bring this Suit ........................................................... 18

*Mandli Could Not Grant an Exclusive License to Facet in 2021* ........................ 19

III.   CONCLUSION ............................................................................................... 20

I.      **LEGAL STANDARDS**

"To survive a Rule 12(b)(6) motion to dismiss, the facts alleged in the Amended Complaint, taken as true by the court, which also draws all inferences in the pleader's favor, must state a plausible, not merely conceivable, case for relief." *Cebollero-Bertran v. P.R. Aqueduct & Sewer Auth.*, 4 F.4th 63, 69 (1st Cir. 2021). Motions to dismiss are regularly granted in patent infringement cases on a variety of grounds based on requirements of the Patent Act (35 U.S.C. § 1 *et seq.*). *See, e.g., Lans v. Digital Equipment Corp.*, 252 F.3d 1320, 1328 (Fed. Cir. 2001) (specifically allowing the disposition of § 287(a) issues through a motion to dismiss filed by an alleged direct infringer, and affirming a Rule 12(b)(6) dismissal of pre-suit damages on the same grounds under § 287(a)); *Addiction & Detoxification Inst. L.L.C. v. Carpenter*, 2014-1797 (Fed. Cir. 2015) (affirming grant of motion to dismiss indirect infringement claims); *Propat Int'l Corp. v. Rpost, Inc.*, 473 F.3d 1187, 1194 (Fed. Cir. 2007) (affirming dismissal of plaintiff's infringement claims for lack of standing resulting from insufficient rights in the patent-in-suit); *Eagle Pharms., Inc. v. Hospira, Inc.*, 424 F.Supp.3d 355, 361 (D. Del. 2019) (granting dismissal of infringement claims in part under § 112 where the written description failed to disclose equivalents).

In considering a motion to dismiss, courts may take notice of documents submitted by the moving defendants where the authenticity of the documents is not disputed by the parties. *See*

*Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993)[4]; *see also Mack v. South Bay Beer Distrib., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986) ("On a motion to dismiss a court may properly look beyond the complaint to matters of public record and doing so does not convert a Rule 12(b)(6) motion to one for summary judgment.").

## II.   ARGUMENT

(A) Facet does not allege and did not in fact mark its product or provide notice of direct infringement to any Defendant for the patents-in-suit as required by 35 USC § 287(a) in order to collect damages or other remedies;

(B) if Facet provided sufficient notice of direct infringement, the seven-year delay between such notice and the Complaint should estop all Counts;

(C) as to Counts II and IV, Facet does not allege and has not provided notice to any Defendant of any direct infringer whom any Defendant induced to infringe the patents-in-suit, prior to expiration of the patents-in-suit, as required by 35 U.S.C. § 271(b)

(D) the claims as granted in the patents-in-suit are not supported by the written description as filed in violation of 35 U.S.C. § 112(b); and

---

[4] This Court "may judicially notice a fact that is not subject to reasonable dispute because it … can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. Federal courts routinely take judicial notice of publicly-recorded documents sourced from the USPTO relating to chains of title of patents. *See, e.g., Genetic Techs. Ltd. v. Briston-Myers Squibb Co.*, 72 F.Supp.3d 521, 526 (D. Del. 2014) (finding it routine for courts to take judicial notice of documents relating to prosecution history of a patent-in-suit because such documents are public records), aff'd sub nom. *Genetic Techs. Ltd. v. Merial LLC*, 818 F.3d 1369 (Fed. Cir. 2016); *SHO Prods., LLC v. Puff Corp.*, 2023 U.S. Dist. LEXIS 11434, *5-6 (C.D. Cal. Jan. 23, 2023) (taking judicial notice of ten documents related to the chain of title of the patents-in-suit for the purpose of supporting ownership arguments in a motion to dismiss); *Charest v. President of Harvard Coll.*, 2016 U.S. Dist. LEXIS 18493, *4 (D. Mass. Feb. 16, 2016) (taking judicial notice of prior licenses and transfers recorded with the USPTO in evaluation of a motion to dismiss).

(E) Facet lacks standing to bring this suit.

## A. Facet did Not Mark its Patented Technology or Provide Notice of Direct Infringement to any Defendant

To recover damages in an action for patent infringement, a patent holder must either publicly mark their product or provide notice to an accused infringer that their actions are infringing. *See* 35 U.S.C. § 287(a). A patent owner is "entitled to damages from the time when it either began marking its product in compliance with section 287(a) [by providing constructive notice] or when it actually notified the accused infringer of its infringement." *Am. Med. Sys., Inc. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1537 (Fed. Cir. 1993). "[T]o obtain pre-suit damages without marking, [a plaintiff] must show that it made an affirmative communication to [a defendant] of specific instances of alleged infringement." *VDPP, LLC v. Volkswagen Grp. Of Am., Inc.*, 2024 U.S. Dist. LEXIS 54703, *11 (S.D.T.X. Mar. 27, 2024).

Facet, a single-employee entity, appears to have been resuscitated for the sole purpose of filing the Amended Complaint and appears to have no product to mark. Nor has Facet alleged or shown any affirmative communication of infringement allegations to Defendants. With the Amended Complaint itself unable to serve as notice for the expired patents-in-suit, Counts I and III must be dismissed.

*Facet's Complaint Cannot Serve as Notice*

The '255 and '328 patents expired no later than August 10, 2021. The original Complaint was filed in 2024. It is simply not possible for the original or Amended Complaint to serve as notice for infringement of the patents-in-suit. *See, e.g., Lans*, 252 F.3d at 1328 (finding dismissal

warranted where the patents-in-suit had expired and the filing of the complaint was therefore ineffective notice).

*Facet did Not Allege that it Notified any Defendant of Infringement*

Facet does not allege that it notified any specific Defendant—or even the fictitious "TomTom"—of infringement of the '255 and '328 patents. Instead, the Amended Complaint vaguely alleges that "TomTom" had knowledge of the broader patent family. (Compl. ¶ 64.) Facet obscures the truth in pleading that it "believes" Defendants had been aware of the asserted patents "and its infringement thereof" due to an alleged meeting held in December 2016. (Compl. ¶¶ 84, 111.) Behind this obfuscation is the absence of any allegation that Facet notified any specific named Defendant of any specific product that infringed a specific claim of either of the patents-in-suit. "Notice 'is an affirmative act, and is something to be done by [the patentee].' . . . The correct approach to determining notice under [§] 287 must focus on the action of the patentee, not the knowledge of the infringer." *Lans*, 252 F.3d at 1327 (quoting *Dunlap v. Schofield*, 152 U.S. 244, 248 (1894)). "[A]ctual notice under § 287(a) must be an affirmative act on the part of the patentee which informs the defendant of infringement." *Id.* at 1328. Facet has not satisfied this standard.

As to the '328 patent specifically, it was only a pending application in December 2016, not an issued patent. (*See* Compl. ¶¶ 84, 111.) A defendant's knowledge of a mere patent application is insufficient. The lack of a patent is determinative concerning no pre-suit knowledge. *State Industries, Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985). As to both the '255 and '328 patents, the Amended Complaint makes no allegations regarding any affirmative act taken by Facet to alert the named Defendants of "TomTom's" alleged

infringement, much less any specific affirmative act as to any of the named Defendants. Therefore, Facet's Amended Complaint is legally deficient and Counts I and III should be dismissed with prejudice.

*Facet did Not Allege that it Marked any Product with the Patents-in-Suit*

Facet's failure to notice Defendants cannot be saved by reliance on public marking of the patents-in-suit. Facet does not allege that it ever marked a product with the patent numbers of the patents-in-suit, and Facet likely could not have marked in accordance with the requirements of 35 U.S.C. § 287 because Facet appears to have no product. Whether or not Facet alleges infringement of all claims in the '255 and '328 patents (which it appears to do through recitation of "infringe at least" language), the § 287(a) marking and notice requirements apply to Mandli and Facet (in their various roles as owners and licensees) because both the '255 and '328 patents claim an apparatus. *Am. Med. Sys. Inc.*, 6 F.3d at 1538-39. Similarly, "[a] patentee's licensees must also comply with § 287" unless the licensing agreement "expressly states that [the licensees] had no obligation to mark." *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 950 F.3d 860, 864 (Fed. Cir. 2020). No agreement disclosed by Facet has any such express statement, including the 2021 Agreement. (*See* Dkt. 22-2.)

*Because Facet Cannot Recover Damages on Any Direct Infringement Theory, the Amended Complaint Should Be Dismissed with Prejudice*

Facet does not allege that it ever put any Defendant on notice of direct infringement in a manner compliant with 35 U.S.C. § 287(a). Facet has similarly failed to allege that it ever marked a product. The first time any Defendant was notified the HD Maps product infringed the patents-in-suit was when the Complaint was filed and/or served in this case, nearly three years

after the patents-in-suit had expired. As a result, the Complaint cannot satisfy the statutory notice

requirement. *Lans*, 252 F.3d at 1328 ("Because [the plaintiff] did not mark their products and

because [the plaintiff] did not inform the [defendants] of infringement before expiration of the

[patents-in-suit], § 287(a) prevents [the plaintiff] from collecting damages from the [defendants]

. . . . [the plaintiff] has not stated a claim on which relief may be granted.")

Facet's inaction foreclosed pre-expiry damages, and the law does not allow post-expiry

damages. With no valid claim under the Amended Complaint and no prospect of further

amendments to state a valid claim, Counts I and III must be dismissed with prejudice.

**B. Whether or Not Facet Provided Sufficient Notice of Direct Infringement, the Seven Year**

**Delay Between Such Notice and the Complaint Should Estop All Counts**

In *Aspex Eyewear*, the Federal Circuit affirmed the district court's dismissal of a 2006

patent lawsuit based on communications in 2003 that supposedly made the alleged infringer

aware of the patents asserted in the lawsuit. *Aspex Eyewear Inc. v. Clariti Eyewear, Inc.*, 605 F.3d

1305 (Fed. Cir. 2010). In its decision, the Federal Circuit cited other cases in which a three-year

period of silence was deemed sufficient to estop enforcement of patents. *See, e.g., Wafer Shave,

Inc. v. Gillette Co.*, 26 F.3d 140 (Fed.Cir.1994); *Scholle Corp. v. Blackhawk Molding Co.*, 133

F.3d 1469 (Fed.Cir.1998).

The only allegations in the Amended Complaint which arguably relate to the notice

required under 35 USC 287 are paragraphs 64, 70, 84, and 111, in which Facet alleges that over

seven years prior to the filing of this case, Facet was aware of Defendants' business and strategy

and disclosed the existence of the patents to Defendants and/or their related entities for the

purpose of negotiating a business relationship.

- 9 -

As discussed above, Defendants do not believe these discussions constituted the notice required by the statute to enable Facet to recover damages for infringement of the patents-in-suit. Nonetheless, if this Court finds that Facet adequately provided the requisite notice of either induced or direct infringement, then this Court then should hold that Facet is estopped from maintaining any claims for patent infringement against the Defendants because Facet waited more than seven years after such notice to file this suit. The Federal Circuit has repeatedly held that periods of silence as short as three years can estop a patentee from suing.

Facet alleges that a December 2016 discussion about services Facet could provide to Defendants constituted "aware[ness]" and "actual knowledge" of the patents-in-suit. (Compl. ¶¶ 63-65.) Facet was silent for more than seven years after those discussions, then sued Defendants. The doctrine of equitable estoppel bars Facet's infringement claims. In *SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 137 S.Ct. 954, 197 L.Ed.2d 292 (2017), the Supreme Court emphasized that "the doctrine of equitable estoppel provides protection against some of the problems that First Quality highlights, namely, unscrupulous patentees inducing potential targets of infringement suits to invest in the production of arguably infringing products." 137 S.Ct. at 967.

"Misleading conduct" occurs when the alleged infringer is aware of the patentee or its patents, and knows or can reasonably infer that the patentee has known of the allegedly infringing activities for some time but has taken no action. *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1042 (Fed. Cir. 1992) (en banc). The very fact that Facet attempts in 2024 to establish notice of infringement based on business negotiations with "TomTom" in 2016

means that Facet made "TomTom" aware of the patents-in-suit and that Facet has known about "TomTom's" products and business plans for more than seven years.

The communications in *Aspex* did not even mention one of the patents in the lawsuit and did not identify any specific allegedly infringing product. Here, Facet alleges that it made "TomTom" aware of both the patents-in-suit and that it made "TomTom" aware that HD Maps infringed those patents (even though one was just a pending application at that time). Further, Facet admits that it delayed seven years between notice and Complaint.

Facet first alleges that it made "TomTom" aware of the '255 and '328 patents as part of Facet's effort to engage with "TomTom's" development of HD Maps in 2016. (Compl. ¶ 62.) None of the Defendants engaged Facet for this purpose. Facet then fails to allege that Facet said anything more to "TomTom", or to any named Defendant, about the patents-in-suit over the following seven years. During that long period of silence, Facet knew that Defendants continued to develop and commercialize HD Maps while Facet actively engaged in licensing, sale, and enforcement efforts with the retained firms of Rowan TELS LLC and Robins Kaplan LLP concerning the '255 and '328 patents.

After lying silent for seven years, Facet now surfaces with an infringement suit against Defendants. Equity should and does bar such an action.

## C. Facet Does Not Allege and Has Not Provided Notice to any Defendant What Activities Constitute Induced Infringement

Above and beyond a plausible allegation of direct infringement (which is not made in this Complaint), a claim for induced infringement must also allege that the defendant knew of the patent and "knowingly induced infringement" or the infringing acts of another. *Kyocera Wireless*

*Corp. v. ITC*, 545 F.3d 1340, 1354 (Fed. Cir. 2008); *see also Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1328 (Fed. Cir. 2009) (requiring plausible allegations that defendant "knowingly induced the infringing acts."). However, "the mere knowledge of possible infringement will not suffice." *Vita-Mix Corp.*, 581 F.3d at 1328; *see also DSU Med. Corp.. v. JMS Co.,* 471 F.3d 1293, 1304 (Fed. Cir. 2006) (holding mere knowledge of possible infringement not sufficient).

Active steps must be taken by an alleged infringer to induce infringement. *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S.Ct. 2060, 2065 (2011) ("affirmative steps to bring about the desired result" is a baseline requirement for a defendant's inducement liability). Facet has failed to provide notice of any actions or infringement by Defendants or third parties, and with no ability for Defendants to change their behavior, Counts II and IV must be dismissed.

*Facet did Not Allege the Prerequisite Direct Infringement for a Claim of Induced Infringement*

As discussed in Section A, the Amended Complaint does not state a claim for direct patent infringement against the Defendants and there is no basis for Facet to remedy the noted deficiencies. Without having adequately alleged any direct infringement, Facet also cannot sustain its Counts II and IV for induced infringement. *See Power Integrations v. Fairchild Semiconductor*, 843 F.3d 1315, 1332 (Fed. Cir. 2009) (induced infringement requires, *inter alia*, a showing that "a third party directly infringed the asserted claims of the [patents-in-suit]").

*Facet did Not Adequately Allege Notice of the Patents-in-Suit*

The patents-in-suit both expired no later than August 10, 2021, more than two years prior to filing the suit. As such (and as discussed in Section A), the Complaint in this case cannot serve to inform Defendants of acts which currently induce infringement since the patents-in-suit had

- 12 -

expired years before the Complaint was filed. Without current infringement, there is no way to prove knowing inducement of continued infringement.

As to the '328 patent specifically, "[a] patent application does not provide notice of the resulting patent for indirect … infringement." *Software Research, Inc. v. Dynatrace LLC*, 316 F.Supp.3d 1112, 1133 (N.D. Cal. 2018). Any notice which Facet may wish to impute to the '328 patent resulting from the December 2016 meeting is insufficient as the '328 patent would not issue until eight months later. *See Netfuel, Inc. v. Cisco Sys. Inc.*, No. 5:18-cv-02352-EJD (N.D. Cal. Sept. 18, 2018) (dismissing pre-suit induced infringement allegations because "[m]ere knowledge of a pending application related to [plaintiff's] technology does not establish [that] [d]efendant knew of the [p]atents-in-[s]uit and knowingly induced infringing acts").

*Facet did Not Adequately Allege Notice of Infringement by Third-Parties*

Facet's allegations about pre-suit knowledge of the patents-in-suit are not enough to sustain Counts II and IV. Facet does not allege that it put any particular named Defendant on notice, at any time, that said Defendant's actions were inducing any specific third party to directly infringe the patents-in-suit. The Amended Complaint does not name any specific third party whom any named Defendant allegedly induced to infringe the asserted patents. (See Compl. ¶¶ 95, 122 (alleging, without more, that "TomTom" induced "its customers and staff" to infringe).) The Amended Complaint also does not allege facts plausibly showing that any named Defendant was aware that another party's acts constituted infringement. *Id.* (alleging, without more, that "TomTom knew or was willfully blind to the fact that it was inducing others . . . to infringe"). This is simply not enough. *See, e.g., Helios Streaming LLC v. Vudu, Inc.*, 2020 U.S. Dist. LEXIS 104522, *2-3 (D. Del. June 15, 2020) (finding that even a letter to defendants which

identified the patents-in-suit but failed to explain how defendant's products or actions infringed was therefore insufficient as notice of induced infringement).

Courts have dismissed induced infringement claims in cases with similar facts. *See, e.g., Best Medical Int'l, Inc. v. Accuracy, Inc.*, No. 2:10-cv-1043 (W.D. Pa. Mar. 9, 2011) (dismissing induced infringement allegations in part because the complaint did not aver what infringing "actions" by defendants were); *E.I. DuPont de Nemours & Co. v. Heraeus Holding GmbH*, 2012 U.S. Dist. LEXIS 140037, *7 (D. Del. 2012) (dismissing claims for induced infringement because the complaint failed to plead facts regarding the nature of the relationship between the defendants and their customers, or about how the sale of the defendants' products related to the patented method); *Stephenson v. Game Show Network, LLC*, 933 F.Supp.2d 674, 681 (D. Del. 2013) (concluding that "plaintiff has not identified any actions whereby defendants assisted each other or anyone else to infringe").

*Because Facet Cannot Recover Damages on Any Induced Infringement Theory, the Amended Complaint Should Be Dismissed with Prejudice*

To state a claim for induced infringement, Facet would need to have plead that (i) it notified one or more of the named Defendants of the patents-in-suit before the patents expired, that (ii) it notified one or more Defendants of a specific thing that a specific third party could do to infringe the patents-in-suit, and also would need to (iii) have plead that one or more of the Defendants deliberately caused that specific third party to do that specific thing before the patents expired. Facet did not so plead. The incomplete allegations of induced infringement as set forth in the Amended Complaint cannot be cured because the parents-in-suit have expired, and so Counts II and IV should be dismissed with prejudice.

**D. The Claims as Granted in the Patents-in-Suit are not Supported by the Written Description as Filed**

A patent claim is not valid if it is directed to subject matter that was not described in the disclosure. 35 U.S.C. § 112. An invalid claim cannot be infringed, and cannot support a claim on which relief can be granted. Despite the statutory presumption that an issued patent is valid, courts routinely invalidate issued patent claims for lack of a written description. The written description requirement is met only when the disclosure relied on for support "reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date." *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc) (citation omitted).

The Amended Complaint fails to allege how the invention claimed in the patents-in-suit is used in or by the HD Maps accused of infringement. Defendants' HD Maps are used for automated driving applications, not for assessment of road markers. In fact, the words "map" and "automated driving" appear nowhere in the four corners of the patents-in-suit. Facet's infringement allegations against HD Maps appear to be best understood as longings about what Retterath wished he had invented.

The written descriptions of the '255 and '328 patents do not reasonably convey that the inventor had possession, as of the filing date of the patent applications, of any invention relating to maps used for automated driving applications. Therefore, claim 12 of the '255 patent and claim 9 of the '328 patent – as asserted in the Complaint – are invalid for lacking an adequate written description.

- 15 -

*'255 Patent Claim 12 Lacks a Written Description*

Claim 12 of the '255 patent recites, *inter alia*,

analyze the portion of the at least one light intensity value of the plurality of light intensity values to determine an assessment for the reflective characteristic of the road marker.

The Complaint asserts that "TomTom's HD Maps include extracted features produced by computer processing systems configured to perform retroreflectivity assessment of LiDAR data." (Compl. ¶ 79.)

The '255 patent does not describe maps or making maps. The '255 patent describes an assessment of retroreflectivity at Figures 14A and 14B and column 7, which all relate to determining the **type of sheeting** on a road sign based on a "reflective characteristic" of the road sign. Thus, the written description of the '255 patent includes assessing what type of sheeting is on a road sign but does not encompass maps or the making of maps based on an assessment of a reflective characteristic.

To the extent that the Complaint attempts to read claim 12 of the '255 patent on the Accused Products ("HD Maps"), there is nothing at all in the '255 patent about maps. Therefore, the Complaint reads claim 12 of the '255 patent in a way that renders claim 12 invalid for lack of a written description.

*'328 Patent Claim 9 Lacks a Written Description*

Claim 9 of the '328 patent recites, *inter alia*,

An automated system for assessing reflective surfaces disposed along a roadway comprising ... a computer processing system operably connected to the active

light sensor and configured to detect objects of interest within the field of view and for each object of interest ... analyze the at least one light intensity value to determine an assessment of a discrete location of the road marker within the field of view.

The Amended Complaint asserts that "TomTom's" HD Mapping systems "analyze the at least one light intensity value to determine an assessment of a discrete location of the road marker within the field of view such as when determining the location of a pavement marking." (Compl. ¶ 106.)

The '328 patent does not explicitly describe "an assessment of a discrete location of the road marker". The '328 patent specification, within its four corners, mentions identifying the location of a road marker at column 1 ("Background of the Invention") by a brief reference to Facet's U.S. Pat. No. 6,266,442. The '442 patent was prior art to the '328 patent, expired no later than 2018, and is not asserted to be infringed by Defendants in the Amended Complaint. The '328 patent also refers several times to the location of an "object of interest" (e.g., a STOP sign as shown in Fig. 6) but takes this location as a given assumption (see, e.g., "sign location" input arrows in Fig. 7), rather than describing how to determine such a location by retroreflectivity "assessment" or by any other means. Indeed, while the '328 patent mentions determination of sign retroreflectivity, sign color, or sign sheeting type at least 96 times in the specification, the only mention of determining a road marker's <u>location</u>, in the '328 patent, is in the claims.

To the extent that the Complaint attempts to read claim 9 of the '328 patent on "TomTom's" HD Mapping systems, there is nothing at all in the four corners of the '328 patent about maps or making maps or about determining the location of a pavement marking, much less

a road sign. Thus, there is no written description in the '328 patent of claim 9 as it is asserted in the Complaint. Therefore, claim 9 of the '328 patent is invalid for lack of a written description.

## E. Facet Lacks Standing to Bring this Suit

A licensee has constitutional standing to sue for infringement only where the licensee has received a transfer of all substantial rights in the patent. *See, e.g., Aspex*, 434 F.3d at 1341 ("The essential issue regarding the right to sue on a patent is who owns the patent."); *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1340 no. 6 (Fed. Cir. 2007) ("The all substantial rights inquiry is a proxy for the statutory requirement that a party bringing an infringement suit have the interests of a patentee …"). Non-exclusive licensees need not (and cannot) be joined because they have neither proprietary interests to protect nor constitutional standing to sue alleged infringers. *See, e.g., Propat*, 473 F.3d at 1193. Parties with the mere right to sue on a patent – cleaved from the right to exclude – accordingly have no standing. *See, e.g., Crown Die & Tool v. Nye Tool & Mach. Works*, 261 U.S. 24, 42 (1923); *Ortho Pharm. Corp. v. Genetics Inst., Inc.*, 52 F.3d 1026, 1034 (Fed. Cir. 1995) (no standing where party had right to sue and non-exclusive license to practice the patent).

These principles limiting the ability of licensees to bring suit are founded on the concern that allowing a patentee to retain title to a patent while assigning others the right to sue "would give the patentee an opportunity without expense to himself to stir up litigation by third persons." *Crown Die*, 261 U.S. at 39; *Mars Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359, 1372 (Fed. Cir. 2008) ("the transfer of the right to sue for past infringement divorced from title creates a risk of unnecessary third-party litigation, whether or not the patent has expired."). The right to sue – exclusive or not – does not confer standing. *Propat*, 473 F.3d at 1194 (affirming dismissal of

complaint without determining question of joinder because plaintiff lacked standing to sue and therefore joinder could not cure the constitutional defect).

Mandli could not assign or grant an exclusive license to Facet in 2021 because Mandli's lender already held a security interest in (and therefore a license to) the patents-in-suit at that time. Accordingly, Facet lacks standing to bring this suit.

### Mandli Could Not Grant an Exclusive License to Facet in 2021

From August 15, 2017, until January 11, 2023, Monona Bank had a recorded security interest in the patents-in-suit. (Exhibits A, B.) The security interest granted to Monona Bank was explicitly granted in and recorded against the patents-in-suit themselves and "all rights to income, royalties, profits, awards, fees, payments, damages, licenses or other rights relating to the [patents-in-suit], including the right to sue for past, present or future infringement, the right to make, use or sell the inventions disclosed or claimed therein, in all other rights and goodwill relating to the [patents-in-suit]." (Exhibit A at 9.) The Monona Bank security interest agreement further provides that, "[e]xcept for inventory sold or accounts collected in the ordinary course of [Mandli]'s business … [Mandli] shall not sell, offer to sell, or otherwise transfer or dispose of the collateral." (Exhibit A at 4.) The license on which Facet relies for standing was signed on April 29, 2021, while Monona Bank's security interest remained in place.

An exclusive license is an assignment or transfer of title, especially where that exclusive license is non-revocable and unconditional. *See, e.g., In re Cybernetic Servs.*, 252 F.3d 1039, 1051 (9th Cir. 2001). The Monona Bank security interest prohibited any transfers or assignments of the patents-in-suit. (Exhibit A at 4.) A security interest in a patent is a license. *See, e.g., Id.* at 1052. "[I]f a patentee-licensor is free to grant licenses to others, licensees under that patent are

- 19 -

not exclusive licensees." *Textile Prods. V. Mead Corp.*, 134 F.3d 1481, 1484 (Fed. Cir. 1998). Accordingly, at the time of execution of the 2021 Agreement, Facet was not an exclusive licensee but rather a mere licensee, because Mandli was unable to actually grant exclusive licenses (much less non-revocable ones) to the patents-in-suit until Monona Bank's security interest was released. As a non-exclusive licensee, Facet cannot maintain this suit in Mandli's absence, nor is Facet even an appropriate party to this suit. *Propat*, 473 F.3d at 1193.

Facet never could have received a right to sue for infringement of the patents-in-suit in 2021, or at any time until the Monona Bank security interest was released in 2023. Regardless of the parties' intents, on the "Effective Date" of the 2021 Agreement (Dkt. 22-2 at 4), Mandli could not assign all substantial rights in the patents-in-suit because portions of those rights were already licensed to Monona Bank. *Abraxis Bioscience, Inc. v. Navinta LLC*, 672 F.3d 1239, 1240 (Fed. Cir. 2011) (attempt to assign patent "failed because [transferor] could not assign what it did not own."). Defendants suspect that Facet and Mandli were aware of this, and intentionally chose to delay recording of the 2021 Agreement until <u>one year to the day</u> after the Monona Bank security interest was released in order to obfuscate the chain of title to the patents-in-suit. Facet is therefore not even properly before this Court as a party without all substantial rights in the patents-in-suit. Accordingly, Facet's Amended Complaint should be dismissed for lack of standing.

## III.    **CONCLUSION**

For the above-stated reasons, Defendants respectfully ask this Court to dismiss the Amended Complaint with prejudice.

Date: July 18, 2024                    _/s/ Matthew V. Burrows_____
                                       Matthew V. Burrows, Esq. (NH Bar #20914)
                                       214 North Main Street
                                       Concord, NH 03301
                                       603-228-1181
                                       burrows@gcglaw.com

                                       Wesley W. Whitmyer, Jr. (*pro hac vice*)
                                       Alan Harrison (*pro hac vice*)
                                       Henry M. Purtill (*pro hac vice*)
                                       Kevin M. Musco (*pro hac vice*)
                                       Whitmyer IP Group LLC
                                       600 Summer Street
                                       Stamford CT 06903
                                       Tel: 203-703-0800
                                       Fax: 203-703-0801
                                       Email: litigation@whipgroup.com
                                              aharrison@whipgroup.com
                                              hpurtill@whipgroup.com
                                              kmusco@whipgroup.com
                                       *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this date, a copy of this filing is being provided to counsel of record via the Court's electronic filing system.

_/s/ Matthew V. Burrows_____
Matthew V. Burrows (#20914)