UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

<u>Facet Technology Corp.</u>

    v.                                                Case No. 24-cv-00111-PB
                                                       Opinion No. 2025 DNH 005

<u>TomTom International B.V., et al.</u>

## MEMORANDUM AND ORDER

Facet Technology Corp. ("Facet") is the exclusive licensee of two patents that claim automated systems for detecting and assessing road signs and reflective pavement markings. It relies on both patents in suing TomTom International, B.V., TomTom, Inc., and TomTom North America, Inc. (collectively "TomTom") for direct and induced patent infringement. TomTom has responded with a motion to dismiss for failure to state a claim. Its primary arguments are that Facet (1) lacks standing, (2) failed to comply with the marking requirements of the Patent Act, (3) failed to allege a plausible claim for induced infringement, (4) is equitably estopped from claiming infringement, and (5) has based its infringement claims on invalid patents. For the reasons described below, none of these arguments is persuasive.

## I. BACKGROUND

**A.   Factual Background**

   1.   The Patents-in-Suit

Facet bases its infringement claims on U.S. Patent Nos. 9,335,255 ("the '255 patent") and 9,671,328 ("the '328 patent"). Both patents are titled "System and Assessment of Reflective Objects Along a Roadway." The U.S. Patent Office issued the '255 patent on May 10, 2016, and the '328 patent on June 6, 2017. Doc. 22-1; Doc. 22-3. Because both patents derive from continuations or divisions of previously filed patents, Facet claims a priority date for the patents-in-suit of August 10, 2001. Doc. 23 at 6, 8. The patents thus expired no later than August 10, 2021. Doc. 33-1 at 2.

The patents-in-suit have applications in the digital mapping of roadways. The '255 patent describes "a system for the assessment of reflective surfaces disposed along a roadway," Doc. 22-1 at 1, and the '328 patent describes "a system for classifying different types of sheeting materials of road signs depicted in a videostream [that] compares estimated retroreflectivity values against known minimum retroreflectivity values for each of a plurality of colors." Doc. 22-3 at 2.

On May 18, 2017, Facet transferred title to the patents-in-suit to Mandli Communications, Inc. ("Mandli"). See Doc. 35-3.

2

2.      Mandli Grants Security Interest in Patents-in-Suit

To obtain a loan, Mandli granted Monona Bank a security interest in the patents-in-suit on August 15, 2017. See Doc. 33-3. Pursuant to the security agreement, Mandli agreed not to

> sell, offer to sell, or otherwise transfer or dispose of the Collateral. Grantor shall not pledge, mortgage, encumber, or otherwise permit the Collateral to be subject to any lien, security interest, encumbrance, or charge, other than the security interest provided for in this Agreement, without the written consent of Lender.

Id. at 4. The Agreement also granted Monona Bank the right to foreclose on the patents in the event of a default. Id. at 6, 9.

Monona Bank's security interest in the patents-in-suit was terminated through a release executed on January 11, 2023. See Doc. 33-4 at 2. Pursuant to the release agreement, Monona Bank "terminate[d] the Security Agreement and terminate[d], release[d] and discharge[d] any and all security interests that it has pursuant to the Security Agreement in any and all right, title and interest of [Mandli], and reassign[ed] to [Mandli] any and all right, title and interest that it may have, in, to and under the [patents-in-suit]." Id.

3.      Mandli Grants Facet Exclusive License in Patents-in-Suit

On April 29, 2021, while Monona Bank's security interest was in effect, Mandli granted Facet an exclusive license to the patents-in-suit. The license states in relevant part:

3

> Facet is hereby exclusively granted <u>all substantial rights in and to the Patent Family</u>, including the right to practice any claimed invention and to enforce and/or license the Facet Patent Family with respect to making, using, or selling products or services under the Facet Patent Family, and Mandli, [. . .] grant[s] to Facet the sole and exclusive rights with respect to the Facet Patent Family to: practice and claimed [sic] invention in any or all of the patents [. . .]; license and/or sublicense any or all of patents [. . .]; and enforce any or all of patents [. . .], <u>and including the sole and exclusive right of standing to file, maintain, dismiss and/or settle any lawsuits</u> with respect to the Facet Patent Family.

Doc. 35-5 at 4. (emphasis added). Pursuant to the license agreement, Mandli retained title to the patents-in-suit while otherwise licensing its rights to exploit the patents to Mandli. Id.

4. Current Litigation

Facet filed its initial complaint in this case on April 23, 2024. See Doc. 1. The current version of the complaint states that TomTom is liable for direct and induced infringement by making and selling its HD Maps product in a manner that infringes one or more claims of the patents-in-suit. See Doc. 23.

## II. STANDARD OF REVIEW

To survive a motion to dismiss for failure to state a claim, a plaintiff must allege facts sufficient to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible if it pleads

4

"factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In testing a complaint's sufficiency, I employ a two-step approach. See Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011). First, I screen the complaint for statements that "merely offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of action." Id. (cleaned up). A claim consisting of little more than "allegations that merely parrot the elements of the cause of action" may be dismissed. Id. Second, I credit as true all of the plaintiff's non-conclusory factual allegations and the reasonable inferences drawn from those allegations, and then determine if the claim is plausible. Id. The plausibility requirement "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of illegal conduct. Twombly, 550 U.S. at 556. The "make-or-break standard" is that those allegations and inferences, "taken as true, must state a plausible, not a merely conceivable, case for relief." Sepulveda-Villarini v. Dep't of Educ. of P.R., 628 F.3d 25, 29 (1st Cir. 2010).

While I generally consider only the facts alleged in the complaint in ruling on a motion to dismiss for failure to state a claim, I may also take account of documents attached to the complaint, documents whose authenticity are undisputed, official public records, and documents adequately referenced in the complaint. See Foley v. Wells Fargo Bank, N.A.,

5

772 F.3d 63, 74 (1st Cir. 2014); Watterson v. Page, 987 F.2d 1, 3-4 (1st Cir. 1993).

A defendant may raise an affirmative defense in a motion to dismiss for failure to state a claim but a dismissal on that basis is warranted only if the facts establishing the defense are "definitively ascertainable from the complaint and other allowable sources of information" and "suffice to establish the affirmative defense with certitude." Gray v. Evercore Restructuring LLC, 544 F.3d 320, 324 (1st Cir. 2008) (cleaned up); Lowe v. Mills, 68 F.4th 706, 719 (1st Cir. 2023).

### III.  ANALYSIS

TomTom presents several different arguments in support of its motion. I begin with its contention that Facet lacks standing to sue.

**A.  Standing**

1.  Constitutional Standing

TomTom argues that Facet lacks standing to enforce the patents-in-suit because the patents were subject to Monona Bank's security interest when Mandli licensed its right to enforce the patents to Facet.[1] Doc. 33-1 at 19.

---

[1]  Although TomTom has based its motion to dismiss on Fed. R. Civ. P. 12(b)(6), a standing challenge is jurisdictional and ordinarily should be based on Fed. R. Civ. P. 12(b)(1). Wiener v. MIB Grp., Inc., 86 F.4th 76, 82 n.8 (1st Cir. 2023). Here, however, the standard of review is the same whether the motion is based on Rule 12(b)(6) or Rule 12(b)(1). Roman-Oliveras v. Puerto Rico Elec. Power Auth., 655 F.3d 43, 45 n.3 (1st Cir. 2011).

6

TomTom bases its argument on the premise that "[a] licensee has constitutional standing to sue for infringement only where the licensee has received a transfer of all substantial rights in the patent." Id. at 18. It then reasons that Mandli lacked the power to transfer all its substantial patent rights to Facet because it had surrendered certain unspecified rights to Monona Bank in the security agreement. Id. at 20. As a result, TomTom contends that Facet is merely a "non-exclusive licensee" that lacks standing to sue. Id.

TomTom's standing argument fails because it is based on an incorrect premise. As the federal circuit recently explained in Intellectual Tech LLC v. Zebra Technologies Corporation, 101 F.4th 807, 813 (Fed. Cir. 2024), a licensee need not control all substantial rights in a patent to have standing to sue for infringement. Id. Instead, it is sufficient for standing purposes if the licensee "has an exclusionary right" even if others also have rights to the patent. Id. (emphasis in original). TomTom does not challenge Facet's claim that it has exclusionary rights to enforce the patents. Thus, TomTom's standing argument is a nonstarter even if Monona Bank's security interest somehow prevented Mandli from transferring all of its substantial rights to Facet.

7

2. <u>Section 281</u>

Section 281 of the Patent Act authorizes only a "patentee" to sue for patent infringement. 35 U.S.C. § 281. Even if a licensee has standing to sue, it cannot qualify as a patentee under this provision unless it holds all substantial rights in the patent on which the claim is based. Univ. of S. Fl. Rsch. Found., Inc. v. Fujifilm Med. Sys. U.S.A., Inc., 19 F.4th 1315, 1319 (Fed. Cir. 2021). TomTom does not base its motion to dismiss on § 281 but any attempt to do so would be unavailing.

Whatever rights Monona Bank obtained from Mandli pursuant to the security agreement, those rights were extinguished when Monona Bank filed its termination statement. <u>See</u> Wis. Stat. Ann. § 409.513(4) (a financing statement ceases to be effective upon filing of a termination statement). At that point, Facet was entitled to all of the rights to the patents that Mandli had previously transferred to Facet in the licensing agreement. Because TomTom does not otherwise challenge the sufficiency of the licensing agreement, Facet necessarily qualifies as a patentee under § 281.

B. <u>**Marking Requirement**</u>

TomTom next argues that Facet cannot recover damages for any infringement that occurred before it filed its initial complaint because it failed to comply with the patent marking statute. <u>See</u> 35 U.S.C. § 287.

To recover damages for infringement when § 287 applies, a plaintiff must either properly mark its patented articles or provide prior notice of infringement to the infringer. Luddy Holdings LLC v. Chung, 11 F.4th 1355, 1359 (Fed. Cir. 2021). Because § 287 operates as a limitation on the right to recover damages rather than as an affirmative defense, the burden of proving compliance with § 287 remains on the patentee. Arctic Cat Inc. v. Bombardier Recreational Prods. Inc. (Arctic Cat I), 876 F.3d 1350, 1366 (Fed. Cir. 2017).

A patentee, however, is not subject to § 287 at all unless it or its licensees have made or sold patented articles. Arctic Cat Inc. v. Bombardier Recreational Prods. Inc. (Arctic Cat II), 950 F.3d 860, 864 (Fed. Cir. 2020). And to prevent the "large scale fishing expedition[s] and gamesmanship" that would result if an alleged infringer could invoke § 287 merely by filing an unsupported motion to dismiss, the Federal Circuit has required alleged infringers to bear "an initial burden of production to articulate the products it believes are unmarked 'patented articles' subject to § 287." Arctic Cat I, 876 F.3d at 1368.

TomTom seeks to satisfy its burden of production by pointing to Facet's allegation in its amended complaint that

> [i]n December 2016, Facet offered to use its LiDAR post processing for TomTom's U.S. data at Facet's office in Minnesota. During these discussions, Facet explained that its processes and systems would allow for faster access to raw TomTom LiDAR, and that Facet could also perform automated pavement marking data

9

> location services from the LiDAR in accordance with the technology patented in the '255 Patent.

Doc. 23 at 11. According to TomTom, this statement amounts to an admission that Facet used the patents to make unspecified articles that were not marked as required by § 287. At best, however, what TomTom sees as an admission by Facet that it manufactured patented articles is merely a contention that Facet made a proposal to make its patented technology available to TomTom. Because TomTom does not otherwise allege that Facet made or sold patented articles, its § 287 argument fails to persuade.

## C. Induced Infringement

TomTom argues that Facet's amended complaint fails to plausibly allege claims of induced infringement. Section 271(b) of the Patent Act states that "[w]hoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). To state a claim for induced infringement, a plaintiff must plausibly plead that "the alleged inducer knew of the patent, knowingly induced the infringing acts, and possessed a specific intent to encourage another's infringement of the patent." Vita-Mix Corp. v. Basic Holding, Inc., 581 F.3d 1317, 1328 (Fed. Cir. 2009). See DSU Med. Corp. v. JMS Co., Ltd., 471 F.3d 1293, 1306 (Fed. Cir. 2006) (mere knowledge of possible infringement insufficient, the plaintiff must prove specific intent and action taken); Tegal Corp. v. Tokyo Electron Co., Ltd., 248 F.3d 1376, 1378

10

(Fed. Cir. 2001) (defendant must take some affirmative act, not simply fail to prevent infringement). Active steps which show intent include "advertising an infringing use," "instructing how to engage in an infringing use," and "assisting in performing an infringing use." Barry v. Medtronic, Inc., 914 F.3d 1310, 1334 (Fed. Cir. 2019) (citation omitted).

TomTom presents two arguments to support its contention. First, it argues Facet does not sufficiently allege that "[d]efendant's actions were inducing any specific third party to directly infringe the patents-in-suit." Doc. 33-1 at 13. Second, TomTom argues that it lacked sufficient pre-suit knowledge of the patents. Id. at 12-13. Neither argument is persuasive.

Facet plausibly alleges that TomTom induced "its customers and staff" to infringe because it "sells, offers for sale, and imports into the United States HD Maps that include features that are extracted from LiDAR data[.]" Doc. 23 at 12. Facet further alleges that TomTom had knowledge of the patents-in-suit at least as early as December 2016, when TomTom was allegedly made aware of Facet's patent portfolio. Id. Such knowledge, if proven, would support Facet's contention that TomTom both knowingly infringed and that it intended to induce others to infringe by continuing to develop and commercialize the HD Maps product line in an infringing manner. See, e.g., In re Bill of Lading Transmission & Processing Sys. Pat. Litig., 681 F.3d 1323, 1341-42 (Fed. Cir. 2012) (finding that advertising the benefits of using

11

a product in accordance with the allegedly infringing patent "gives rise to a reasonable inference that you intend to induce your customers to accomplish these benefits through utilization of the patented method. This is sufficient to push the complaint past the line 'between possibility and plausibility'" (quoting Twombly, 550 U.S. at 557)).

**D.    Estoppel**

TomTom also argues that Facet should be equitably estopped from prosecuting its infringement claims. Doc. 33-1 at 9-11. Equitable estoppel is an affirmative defense "addressed to the sound discretion of the trial court." A.C. Aukerman Co. v. R.L. Chaides Const. Co., 960 F.2d 1020, 1041 (Fed. Cir. 1992), abrogated on other grounds by SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC, 580 U.S. 328 (2017). In the patent infringement context, equitable estoppel occurs where

> (1) the patentee, through misleading conduct, led the alleged infringer to reasonably believe that the patentee did not intend to enforce its patent against the infringer; (2) the alleged infringer relied on that conduct; and (3) due to its reliance, the alleged infringer would be materially prejudiced if the patentee were permitted to proceed with its charge of infringement.

Aspex Eyewear Inc. v. Clariti Eyewear, Inc., 605 F.3d 1305, 1310 (Fed. Cir. 2010). The defendant carries the burden to establish the defense "based on proof, not a presumption." A.C. Aukerman Co., 960 F.2d at 1043.

Dismissing Facet's claims based on TomTom's equitable estoppel defense would be premature at this early stage because hotly contested factual issues need to be further developed before I could make a finding on the estoppel defense. Specifically, the parties dispute the significance and content of the December 2016 meeting. See Doc. 33-1 at 10; Doc. 23 at 5-6. Facet alleges that TomTom was made aware of the patents-in-suit at this meeting and was thus on notice of its patents from that time forward,[2] while TomTom questions whether this meeting constituted adequate notice of the patents and argues that Facet's subsequent seven-year silence was misleading. The cases TomTom relies on are inapposite at the pleading stage because they all involved trial courts dismissing claims on summary judgment after reviewing fully developed factual records. See Aspex Eyewear, 605 F.3d at 1310; Scholle Corp. v. Blackhawk Molding Co., Inc., 133 F.3d 1469 (Fed. Cir. 1998); Wafer Shave, Inc. v. Gillette Co., 26 F.3d 140 (Fed. Cir. 1994). Dismissal based on the affirmative defense of equitable estoppel simply is not warranted on the present record.

---

[2] Specifically, Facet alleges that in December 2016 Facet offered to use its LiDAR post-processing on TomTom's data, and that during discussions between the parties, Facet explained the benefits of its processes and how its services made use of the technology in the '255 patent. Doc. 23 at 5. Facet also alleges that during these same discussions TomTom was made aware of Facet's patent portfolio containing both the '255 and '328 patents, the latter being a pending application at the time. Id.

13

E.     **Written Description Requirement**

TomTom's last argument is that the patents-in-suit are invalid because they do not comply with the Patent Act's written description requirement. "A patent is presumed to be valid, and this presumption can be overcome only by facts supported by clear and convincing evidence to the contrary." Enzo Biochem, Inc. v. Gen-Probe Inc., 323 F.3d 956, 968 (Fed. Cir. 2002). The written description requirement of § 112 of the Patent Act provides as follows:

> The specification shall contain a written description of the invention, and of the manner and process of making it and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

35 U.S.C. § 112. "The purpose of the written description requirement is to prevent an applicant from later asserting that he invented that which he did not." Amgen Inc. v. Hoechst Marion Roussel, Inc., 314 F.3d 1313, 1330 (Fed. Cir. 2003). "In evaluating whether a patentee has fulfilled this requirement, our standard is that the patent's disclosure must allow one skilled in the art to visualize or recognize the identity of the subject matter purportedly described." Koito Mfg. Co., Ltd. v. Turn Key Tech, LLC, 381 F.3d 1142, 1154 (Fed. Cir. 2004) (cleaned up). "Whether a specification complies with the

written description requirement of 35 U.S.C. § 112, ¶ 1, is a question of fact reviewed for substantial evidence[.]" Id. at 1149.

TomTom alleges that the patents-in-suit are insufficiently supported by the written descriptions in the patents because the patents, as filed, do not mention the words "map" or "automated driving" and therefore do not reasonably convey that Facet had possession, as of the filing date of the patent applications, of any invention related to maps used for automated driving applications.[3] Doc. 33-1 at 15.

Facet argues in response, and I agree, that dismissal on the basis of TomTom's invalidity defense would be premature. Doc. 35 at 8-10. When considering the defense of patent invalidity as part of a defendant's motion to dismiss, the court should grant dismissal only where it is completely clear from the facts presented that the defendant should prevail. See Tech Licensing Corp. v. Videotek, Inc., 545 F.3d 1316, 1329 (Fed. Cir. 2008) (party asserting invalidity of patents has burden of persuasion through clear and convincing evidence); Blackstone Realty LLC v. FDIC, 244 F.3d 193, 197 (1st

---

[3]  To the extent that TomTom's motion to dismiss also presents an argument that the claims in Facet's patents-in-suit cannot be enforced against TomTom because they fail to allege how TomTom's HD Maps product infringes the patents, this is not an affirmative defense, but rather an argument that Facet has failed to state a claim. See Doc. 33-1 at 15. Assessing this argument under the 12(b)(6) plausibility pleading standard, I conclude that Facet has presented sufficient facts to plausibly sustain its claims against TomTom.

Cir. 2001) (dismissal based on affirmative defense requires facts establishing defense to be clear on the face of plaintiff's pleadings); Lowe, 68 F.4th at 719 (there can be no doubt that plaintiff's claims are barred in order to dismiss on the basis of affirmative defense); see also Coop. Ent., Inc. v. Kollective Tech., Inc., 50 F.4th 127, 133 (Fed. Cir. 2022) ("At a minimum, the district court should have denied the motion to dismiss because [the plaintiff's] allegations in the complaint regarding the claims and the '452 patent's written description create a plausible factual issue [. . .] and the district court erred in resolving this factual issue against [the plaintiff].")

TomTom's argument that the patents-in-suit are invalid for lack of an adequate written description is an evidentiary contention that is underdeveloped and far from clear from the face of Facet's pleadings. I decline to undertake an inquiry into the validity of the patents-in-suit without affording both parties further opportunity for discovery.

## IV. CONCLUSION

For the reasons explained above, I deny TomTom's motion to dismiss. Doc. 33.

SO ORDERED.

/s/ Paul J. Barbadoro
Paul J. Barbadoro
United States District Judge

January 28, 2025
cc: Counsel of Record